IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TIFFANY THOMAS, *individually and as parent of other C.A., a minor*, | CASE NO. 1:25-cv-2167 |
| | DISTRICT JUDGE DONALD C. NUGENT |
| Plaintiff, | |
| | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| vs. | |
| BEACHWOOD CITY SCHOOL DISTRICT BOARD OF EDUCATION, | **REPORT A ND RECOMMENDATION** |
| Defendants. | |

In October 2025, *pro se* Plaintiff Tiffany Thomas filed a motion for preliminary injunction. Doc. 3. In December 2025, the District Court referred this matter to a Magistrate Judge for pretrial supervision, including for completion of a report and recommendation for case-dispositive motions. Doc. 16, at 1. This report and recommendation generally concerns Thomas's motion for preliminary injunction. The parties have also filed several additional and related motions, which are also addressed below. For all the reasons stated, I recommend that Thomas's motion for preliminary injunction, Doc. 3, be denied. Additionally, Thomas's motion for an evidentiary hearing, Doc. 10, is denied, and Defendant's motion to file supplemental documents in opposition to the motion for preliminary injunction, Doc. 13, is granted.

**Background**

In October 2025, Thomas, filed a Complaint seeking declaratory and injunctive relief. Doc. 1. The Complaint stated four counts against Defendant, Beachwood City School District Board of Education. Doc. 1, at 1, 3. Thomas contemporaneously filed a motion for preliminary injunction seeking an injunction ordering Defendant to:

> 1.  Immediately restore Plaintiff's ability to communicate directly by email and in person with her child's teachers, therapists, and service providers; and
>
> 2.  Refrain from further retaliation or interference with Plaintiff's statutory and constitutional rights pending resolution of this case.

Doc. 3, at 1.

The circumstances underlying Thomas's Complaint and motion for preliminary injunction concern her child, C.A., and interactions beginning before C.A.'s 2025–26 school year.[1] In early 2025, Thomas filed a state complaint alleging denial of inclusive extracurricular and mental-health programing.[2] *See* Doc. 1, at 2; Doc. 12-8. In August 2025, Thomas filed

---

[1]  The following factual summary relies on facts alleged in the pleadings and verified documents provided in relation to Thomas's motion for preliminary injunction.

[2]  Although Thomas included this allegation in the Complaint, it does not appear to be related to the claims in the Complaint.

complaints with Defendant's human resources department alleging retaliation and harassment by school district administrators. Doc. 1, at 2.

From July 2025 to, at least, September 2025, Thomas engaged in consistent email and in-person contact with various teachers and support staff that allegedly violated the Defendant's communication standards. *See e.g.*, Doc. 3-8; 8-1, at 5–6; Doc. 8-2, at 8–10; Doc. 12-2; Doc. 12-4. In September 2025, Defendant instituted a communication protocol, which established that email communications from Thomas to C.A.'s teachers must be directed to only the Superintendent, the Principal, and the Director of Pupil Services. Doc. 1, at 2. Additionally, the communication protocol blocked all emails from Thomas's email address if sent directly to staff or teachers. *Id*. Thomas was informed that this communication protocol was implemented based on her violations of the district's communication standards. *See* Doc. 3-8. On September 12, 2025, following implementation of the communication protocol, Thomas asserted that she "cannot meaningfully participate in [C.A.'s] IEP[3] process" and "cancel[ed] all pre-meetings with staff that had been scheduled in person" so that she could "devote the coming week to [her] resolution meeting, to

---

[3]      The initialism "IEP" stands for individualized education program. *See Honig v. Doe*, 484 U.S. 305, 311 (1988). The Individuals with Disabilities Education Act ("IDEA"), reauthorized in 2004 as the Individuals with Disabilities Education Improvement Act ("IDEIA"), *see* Pub. L. 108-446, 118 Stat 2647 (Dec. 3, 2004), and previously named the Education of the Handicapped Act (EHA), mandates that an IEP be developed and reviewed, through specific processes established by statute, for every disabled child to ensure that each child receives the statutorily required free appropriate public education ("FAPE"). *Id*.

cooperation with the outside investigator working with the district and to completing the filing of additional complaints with appropriate state agencies in regard to Beachwood Staff." *See* Doc. 8-1, at 50–54. A September 15, 2025, letter from Thomas says that the Director of Pupil Services, Speech Pathologist, and Occupational Therapist, conducted a meeting, as previously requested by Thomas, but that Thomas did not appear at that meeting. Doc. 8-1, at 55. Thomas's letter asserts that she:

> explicitly stated to you that I would not be participating in meetings this week, including the IEP meeting, because I am focusing my time and energy on the state complaints and resolution sessions currently pending. You yourself acknowledged the cancellation of the IEP meeting but failed to mention the cancellation of this related provider meeting.

*Id.*

On September 17, 2025, Thomas filed a state complaint alleging violations of IDEA and Ohio law arising out of the communication protocol and other alleged conduct by Defendant. *See* Doc. 13-1. In October 2025, Thomas filed an addendum to the state complaint alleging "procedural and ethical violations" arising out of the allegedly "improper conduct" that was the September 15 meeting. Doc. 8-1, at 58. On November 16, 2025, the Ohio Department of Education and Workforce, issued findings on Thomas's September 17 complaint and found that the Defendant did not violate Thomas's parent-participation rights or the statutory provisions requiring prior written notice. *See* Doc. 13-1, at 3–4.

4

In October 2025, Thomas filed this action alleging that since the Defendant employed the communication protocol banning certain email communications, C.A. has "lost instructional time, missed services, and regressed behaviorally." Doc. 1, at 2. Based on the communication protocol and alleged repercussions that the communication protocol has had on Thomas's ability to engage with school teachers and staff, she alleges: denial of C.A.'s right to a FAPE under IDEA; disability discrimination on behalf of C.A. under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act ("ADA"); retaliation for her protected activity under Section 504, the ADA, and the First Amendment; and a First Amendment claim that the communication protocol unlawfully restricted her ability communicate with public officials. *See* Doc. 1, at 3.

**Legal Standard**

When considering a preliminary injunction under Federal Rule of Civil Procedure 65, courts consider the same factors considered in determining whether to issue a temporary restraining order. *Northeast Ohio Coalition for Homeless and Service Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (citing *Summit Cnty. Democratic Central and Executive Committee v. Blackwell*, 388 F.3d 547, 550 (6th Cir. 2004)). The moving party has the burden of establishing the following four factors: whether (1) the moving party has a strong or substantial likelihood of success on the merits; (2) the moving party will suffer irreparable harm unless injunctive

5

relief is granted; (3) the requested relief will cause substantial harm to others; and (4) injunctive relief is in the public interest. *Id.*; *see also Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009). "These factors are not prerequisites but are factors that are to be balanced against each other." *Overstreet v. Lexington-Fayette Urb. County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

**Discussion**

*Motion for Preliminary Injunction*

Thomas makes two requests in her motion for preliminary injunction: (1) immediately restore her ability to communicate directly by email and in person with her child's teachers, therapists, and service providers; and (2) refrain from further retaliation or interference with her statutory and constitutional rights pending resolution of the case. Doc. 3, at 1. Thomas references and provides brief arguments for each of the four factors to be considered on a motion for preliminary injunction. *See* Doc. 3, at 2. Each factor and Thomas's related arguments are discussed in turn.

1.    *Likelihood of success on the merits*

To demonstrate the first factor, Thomas must show that she is likely to succeed on the claims raised in her Complaint. Whether a movant is likely to succeed on the merits is a question of law. *See Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005).

Thomas raises four claims in her Complaint: Count I – Denial of FAPE (IDEA, 20 U.S.C. § 1400 et seq.); Count II – Disability Discrimination (Section

6

504 and ADA); Count III – Retaliation (Section 504, ADA, and First Amendment); and Count IV – First Amendment Violations. *See* Doc. 1, at 3.

*As to Count I*, Thomas alleges the following: "By preventing Plaintiff's meaningful participation in her child's IEP and withholding service information, Defendant violated IDEA procedural safeguards and deprived C.A. of a Free Appropriate Public Education." Doc. 1, at 3. In her motion for preliminary injunction, Thomas does not make any specific argument as to how she will prove her Count I claim. *See* Doc. 3, at 2. Instead, she generally claims that "[t]he communication block violates 20 U.S.C. § 1415(b)(1) (parental participation). 29 U.S.C. § 794, 42 U.S.C. § 12132, and the First Amendment. Defendant offers no lawful justification for banning a parent from communication about her child's education." Doc. 3, at 2. As Defendant's note, however, a prerequisite to relief under IDEA is administrative exhaustion. *See* 20 C.F.R. § 1415(f), (g), (*l*).

Thomas makes no allegation, either in the Complaint, the motion for preliminary injunction, or her reply to show that she has exhausted her administrative remedies. *See Fry v. Napoleon Cmty. Schools*, 580 U.S. 154, 165–68 (2017) (explaining the IDEA exhaustion requirement and holding that even claims brought under a statute other than IDEA require exhaustion where the claim seeks relief for denial of FAPE based on application of 20 U.S.C. § 1415). Instead, in her reply, Thomas asserts that her filings with the state satisfy the exhaustion requirement and that, regardless, she is excused

7

from the exhaustion requirement because the Defendant's conduct interfered with her participation in the due process hearing. *See* Doc. 12, at 4.

In support of her assertion that she has satisfied the exhaustion requirement, however, Thomas only asserts that she has filed certain state agency complaints and that she filed, but then withdrew, a due process complaint. *Id*. These assertions do not show that she has *completed* the administrative processes required to exhaust her claims under IDEA. Likewise, the allegation that the Defendant *obstructed* her due process hearing is unsubstantiated and thus unpersuasive. *See Bishop v. Oakstone Acad.*, 477 F. Supp. 2d 876, 883 (S.D. Ohio 2007) (recognizing that "the burden of establishing the futility or inadequacy of the administrative remedies rests on the party seeking to bypass them. Mere speculation at the futility or procedural deficiencies of a proposed administrative proceeding is not enough to satisfy this burden.") (citations omitted). Based on the above, Thomas's Count I claim does not have a strong likelihood of success on the merits.

*As to Count II*, Thomas alleges the following: "Defendant discriminated against C.A. on the basis of disability by restricting parental participation, failing to provide equal access to extracurricular programs, and ignoring accommodation needs." Doc. 1, at 3. Thomas does not make any specific argument as to the likelihood of success on the merits for Count II in her motion for preliminary injunction. *See* Doc. 3, at 2. In response, the Defendant again asserts that to the extent that Count II raises a Section 504 claim, that

8

claim requires a showing of administrative exhaustion before initiating a court action. *See* Doc. 8, at 13. As with Count I, Thomas's complaint makes no allegations regarding administrative exhaustion of her Count II claim. *See generally* Doc. 1. And Thomas's argument in reply, that exhaustion does not apply to her Section 504 or ADA claims, fails because her claims specifically concern allegations that C.A. was deprived of his right to a FAPE. *See* Doc. 12, at 4 (citing *Fry*, 580 U.S. 154 in arguing that exhaustion does not apply). And *Fry*, which Thomas cites to support her attempt to avoid the exhaustion requirement, illustrates why the exhaustion requirement applies for her claim. As the Court in *Fry* explained:

> exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a FAPE. If a lawsuit charges such denial, the plaintiff cannot escape § 1415(l) merely by bringing her suit under a statute other than the IDEA–as when, for example, the plaintiffs in *Smith* claimed that a school's failure to provide a FAPE also violated the Rehabilitation Act. Rather, that plaintiff must first submit her case to an IDEA hearing officer, experienced in addressing exactly the issues she raises.

*Fry*, 580 U.S. at 168.

More detrimental, however, to Thomas's Count II claim—and generally to all claims she purports to raise on behalf of C.A.—is that, as the Defendant points out, Thomas is unable to represent C.A.'s interests. *See* Doc. 8, at 13. Taking as fact the allegations in the Complaint, Thomas does not appear to be an attorney. A non-attorney parent has no standing to represent her child's interests without assistance of counsel. *See* Fed. R. Civ. P. 17(c)(1)(A)

9

(permitting a "general guardian" to "sue ... on behalf of a minor"), (2) ("A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem."); *Sheperd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) ("[P]arents cannot appear pro se on behalf of their minor child because a minor's personal cause of action is her own and does not belong to her parent, or representative.") (citing *Cheung v. Youth Orchestra Found. Of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990)).

So, as to Count II, Thomas has not shown a likelihood of success on the merits.

*As to Count III*, Thomas alleges retaliation under Section 504, the ADA, and the First Amendment based on the following actions by Defendant: "After Plaintiff filed protected complaints and founded a special education parent teacher association chamber, Defendant retaliated by imposing a communication block, mischaracterizing her advocacy as harassment, and discouraging staff interaction." Doc. 1, at 3. Again, Thomas makes no specific argument as to the merits of Count III in her motion for preliminary injunction. *See* Doc. 3, at 2.

As Count III's likelihood of success, the first problem is that there is no private cause of action for retaliation under Section 504. *See Smith v. Michigan Dep't of Corr.*, 159 F.4th 1067, 1074–82 (6th Cir. 2025). As to retaliation under the ADA, Thomas:

> must show: (1) [that she] engaged in protected activity; (2) the Board knew of the protected activity;

10

(3) the Board took an adverse action against [her]; and (4) there was a causal connection between the protected activity and the adverse action.

*M.L. v. Williamson Cnty. Bd. of Educ.*, 772 F. App'x 287, 291 (6th Cir. 2019).

In her motion for preliminary injunction, Thomas simply presents the nature of her claims by citing the statutes she invoked in the Complaint and the First Amendment and asserting that Defendant and its representatives haven't provided a lawful justification for their actions. Doc. 3, at 2. But Thomas's own evidence shows that's not true. In an email to Thomas, the District's superintendent told her that her emails to staff members—who had themselves filed a complaint against Thomas, *see* Doc.8-1, at 35–38—violated the District's "Communication Standards,'" *see* Doc. 8-1, at 4–6, and were "received" by staff "as harassing, threatening and attempts to intimidate." Doc. 3-8, at 2.

Further, although Defendant argued in opposition that Thomas could not show that she suffered an adverse action as would be needed to sustain an ADA retaliation claim, Doc. 8, at 17–18, Thomas merely restates the facts without confronting whether the communication protocol amounts to an adverse action, *see* Doc. 12, at 1–2. In other words, Thomas not only makes no effort to show how she has met any of the prima facie elements of the ADA retaliation claim asserted in Count III, but she ignores her own evidence which belies the only basis that she asserts to support the claim. Consequently, Thomas has not shown a likelihood of success on her ADA retaliation claim.

Insofar as Thomas's Count III raises a First Amendment Retaliation claim, she must establish:

> (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

*Paige v. Coyner*, 614 F.3d 273, 277 (6th Cir. 2010). As with the ADA retaliation claim raised in Count III, Thomas makes no argument in her motion for preliminary injunction that she has pleaded a prima facie First Amendment retaliation claim.

Thomas also cites no case in which a court has held that a communication protocol similar the one at issue here violated a parent's First Amendment rights. To the contrary, courts that have confronted this circumstance have rejected First Amendment claims. *See L. F. v. Lake Washington Sch. Dist. #414*, 947 F.3d 621, 626 (9th Cir. 2020); *Boone v. Lowell Area Schs.*, 2025 U.S. Dist. LEXIS 193862, *9 (W.D. Mich. Sept. 30, 2025); *see also Searle v. Red Creek Cent. Sch. Dist.*, No. 21-cv-6086, 2021 WL 5086405, at *4 (W.D.N.Y. Nov. 2, 2021); *cf. McElhaney v. Williams*, 81 F.4th 550, 559 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 696 (2024) ("a school may impose reasonable, viewpoint neutral, time, place, and manner restrictions on parental interactions with the school").

12

In short, Thomas has not shown that her Count III claim is likely to succeed on the merits.

*As to Count IV*, Thomas alleges that the Defendant violated her First Amendment rights because: "The communication protocol unlawfully restricts [her] right to petition and communicate with public officials about her child's education." Doc. 1, at 3. Thomas makes no specific argument regarding the likelihood of success on Ground IV in her motion for preliminary injunction. *See* Doc. 3, at 2.

By contrast, and as noted above, courts have rejected similar First Amendment claims. *See* Doc. 8, at 14–15 (citing *Boone*, 2025 U.S. Dist. LEXIS 193862, at *9–12); *see also L. F.*, 947 F.3d at 626. And, as Defendant also highlights, the Sixth Circuit holds that a school "may impose reasonable, viewpoint neutral, time, place and manner restrictions on parental interactions with the school." *See* Doc. 8, at 15 (citing *McElhaney*, 81 F.4th at 559). Based on both the filings to date and the absence of any developed argument from Thomas regarding the likely success on the merits, the described communication protocol constitutes a permissible time, place, and manner restrictions, rather than a content-based or retaliatory action in violation of the First Amendment.

The first factor—likelihood of success on the merits—thus, does not weigh in favor of granting Thomas's requested preliminary injunction.

13

2.     *Irreparable harm*

Next, the Court considers whether Thomas has shown that she will suffer irreparable harm unless injunctive relief is granted. *See Blackwell*, 467 F.3d at 1009. While the Court weighs all four factors, the Sixth Circuit has held that when evaluating a motion for preliminary injunction "the *extent* of an injury may be balanced against other factors, the *existence* of an irreparable injury is mandatory." *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 327 (6th Cir. 2019) (explaining that the irreparable harm requirement "is indispensable: If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief *now* as opposed to at the end of the lawsuit.") (emphasis in original). Notably, "[t]o merit a preliminary injunction, an injury 'must be both certain and immediate,' not 'speculative or theoretical.'" *Id.* (citing *Mich. Coal. Of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)).

Here, Thomas makes two claims in an effort to demonstrate irreparable harm. First, she claims "[e]ach school day lost without parental participation causes irreversible educational regression for a non-verbal child." Doc. 3, at 2. Second, she asserts that "[l]oss of meaningful IDEA participation is, by law, an irreparable injury." *Id.* To support his second assertion, Thomas cites the Supreme Court decision *Honig v. Doe*, 484 U.S. 305 (1988). *See id.*

*As to her first argument*, Thomas provides no support for her assertion that the communication protocol employed by the Defendant deprives her of a

14

statutorily defined right to parental participation. In the body of her motion Thomas cites the following statutory provisions in support of her position that she was deprived meaningful parental participation:

- 20 U.S.C. § 1415(b)(1), which provides that the school district must establish a procedure affording "[a]n opportunity for the parents of a child with a disability to examine all records relating to such child and to participate in meetings with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child, and to obtain an independent educational evaluation of the child."

- 29 U.S.C. § 794 and 42 U.S.C. § 12132, which generally prohibit disability discrimination, including by exclusion or denial of benefits, against qualified individuals on the basis of a disability by any federally funded program or public agency.

*See* Doc. 3, at 2. Based on what the parties have presented, the communication protocol employed by the Defendant does not affect Thomas's ability to examine records or participate in meetings relevant to C.A.'s FAPE. Instead, the communication protocol establishes three points of contact for Thomas about any questions she may have related to C.A.'s FAPE. And Thomas provides no support for the assertion that the Defendant's implementation of the communication protocol amounted to disability discrimination.

Additionally, the exhibits attached to Thomas's motion indicate that she is relying on several regulatory provisions, which establish the right to meaningful parental participation. *See* Doc. 3-7, at 1 (citing 34 C.F.R. §§

15

300.501, 300.503, 300.613). The sections Thomas cites do not provide the support she appears to believe they do.

Section 300.501 establishes parental rights to inspect and review all education records, participate in meetings, and be involved in placement decisions. Thomas claims she has not been able to meaningfully participate due to the communication protocol, Doc. 3, at 2, but that protocol only blocks Thomas from directly communicating with certain teachers and support staff. None of the provisions that Thomas cites entitle her to direct communication with each teacher or staff member who interacts with her child. Nor does she argue that those regulations impose such a requirement. And the record shows that Thomas continues to communicate with, for instance, the Director of Pupil Services regarding IEP meeting scheduling and that the only meeting that the record shows that was missed appears to have been missed due to Thomas's refusal to participate. *See* Docs. 8-1, at 50–54; 13-1. So nothing in the Complaint or the motion show that Thomas has been *excluded* meaningfully participating in IEP meetings or placement decisions. *See* Docs. 1, 3.

As to Thomas's right to inspect and review education records, *see* 34 C.F.R. § 300.501(a), nothing in the Complaint or motion show that Defendant or its officers failed to comply with an inspection request within the required timeframe. *See* 34 C.F.R. § 300.613(a) (providing 45 days for an educational agency to respond to reasonable requests). Additionally, to the extent that Thomas is arguing that she was not provided the prior written notice required

16

by Section 300.503, that notice is only required before C.A.'s school either proposes or refuses "to initiate or change the identification, evaluation, or educational placement of [C.A.] or the provision of FAPE to [C.A.]." 34 C.F.R § 300.503(a)(1)–(2). Neither in Thomas's motion, nor in her Complaint, does she argue that such proposal or refusal have occurred without her participation or the requisite notice.

Moreover, Thomas has not provided any evidence that C.A. experienced any regression as a result of the communication protocol. In her reply, Thomas lists for the first time "documented regression" that C.A. has allegedly suffered. Doc. 12, at 3. To this end, Thomas asserts that the Defendant has not rebutted certain alleged regressions that C.A. has experienced. *Id*. But because these alleged "educational injuries" were not provided in Thomas's motion for injunctive relief, it is unsurprising that the Defendant did not rebut those allegations. Indeed, a reply is not an appropriate vehicle for presenting new evidence. *See Lewis v. Gotham Ins. Co.*, No. 09-cv-52, 2009 WL 3698028, at *1 (S.D. Cal. Nov. 5, 2009) ("'It is improper for a moving party to introduce new facts ... in the reply brief than those presented in the moving papers' when those facts could have been presented in the opening brief.") (citation omitted); *Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239–40 (N.D. Tex. 1991); *cf. Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018) (explaining that arguments not raised in an opening brief are forfeited).

And, as discussed earlier, Thomas's apparent status as a non-attorney means that she cannot represent C.A.'s interests. *See* Fed. R. Civ. P. 17(c)(2).

*As to her second argument*, the Supreme Court's decision in *Honig* does not support Thomas's broad assertion that she experienced a "loss of meaningful IDEA participation" simply by having her email communications directed to school administrators rather than directly to teachers or staff. *See* Doc. 3, at 2. Indeed, beyond generally explaining the importance of parental participation, *see* 484 U.S. at 309, *Honig* is inapposite to Thomas's case. The dispute in *Honig* arose when two students in different school systems were expelled based on behavior attributed to conditions accounted for in their IEPs while administrative proceedings pertaining to those IEPs remained pending. *See* 484 U.S. at 312–17. The Supreme Court held that the expulsion violated the students' and parents' rights under the EHA's "stay put" provision.[4] 484 U.S. at 309, 325. Specifically, the Court found that by expelling the students

---

[4] The EHA's stay-put provision cited in *Honig* is substantially the same as the provision found in the now applicable IDEA, which provides in relevant part:

> [D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j).

while the administrative process was ongoing, the school violated the parents' rights to meaningfully participate in the administrative process without detriment to the students' education. 484 U.S. at 328 (affirming an injunction stopping the students' indefinite suspension pending resolution of the required statutory procedures). By contrast, Thomas doesn't assert that C.A. was expelled. *See* Doc. 1, at 3; Doc. 3, at 2. The Complaint is also devoid of any allegation that Defendant impeded Thomas's participation in any administrative proceedings related to C.A.'s IEP or that Defendant made any change to C.A's IEP without Thomas's involvement. *See* Doc. 1, at 3.

Based on the above, Thomas has not shown that she is likely to face imminent and irreparable harm based on Defendant's alleged conduct. So this factor weighs against granting the requested injunctive relief.

### 3. *Balance of Equities and Public Policy*

Because the two most important factors discussed above weigh against granting Thomas's requested preliminary injunction, the final two factors are only discussed briefly together.

*As to the balance of equities*, Thomas asserts that "[r]estoring communication imposes no burden on the District; continued restrictions severely harm the student a parent." Doc. 3, at 2. This general assertion provides nothing to substantiate Thomas's assertion that the Defendant would be unburdened if it is enjoined from implementing the communication protocol. By contrast, the Defendant asserts that if the communication protocol is lifted

"District staff will be unnecessarily subjected to communications found to be in violation of the District's Communication Standards." Doc. 8, at 25. And, as discussed above, Thomas has not shown that the harms alleged are the sort that require immediate injunctive relief or a likelihood of success on the merits of her claims. So the balance of equities factor weighs against the requested injunctive relief.

*As to the public policy factor*, Thomas asserts that "[e]nsuring transparency and parental participation in special education furthers the purposes of IDEA and protects constitutional rights." Doc. 3, at 2. No one disputes the importance of transparency and parental participation in special education. *See Honig*, 484 U.S. at 325 (explaining the importance of meaningful parental participation and how the stay-put provision protects the interests of the student to allow for meaningful parental participation). As discussed above, however, Thomas's allegations and the arguments she raises do not show that the Defendant's alleged conduct—implementing a communication protocol that requires that Thomas contact school officials other than C.A.'s direct instructors interfered with this interest. So the public policy factor does not support the requested injunctive relief.

*Motion for evidentiary hearing*

Separately, Thomas moves the Court to conduct an evidentiary hearing regarding the motion for preliminary injunction. *See* Doc. 10. This motion asserts that "live evidence" is necessary to the resolution of her motion for

preliminary injunction because the motion "raises substantial and material disputes of fact that cannot be resolved on the written record alone." Doc. 10, at 1. Thomas thus claims that a hearing is needed "to assess credibility, evaluate omitted or distorted documents, examine the timeline of events, and protect minor student C.A. from further irreparable harm." *Id*.

Thomas presents nothing to show that the documents provided *omitted or distorted* facts and, in any event, as discussed above, she has not shown that she or C.A. have experienced *irreparable harm*. Indeed, for the reasons explained above, it is apparent that she cannot represent C.A.'s interest. *See* Fed. R. Civ. P. 17(c)(2).

Thomas's motion for an evidentiary hearing is thus DENIED.

*Motion for leave to file instanter supplemental exhibit*

The Defendant also filed a motion for leave to file instanter supplemental authority in support of its opposition to Thomas's motion for preliminary injunction. *See* Doc. 13. This document is pertinent to the Defendant's opposition and Thomas has not opposed the inclusion of this supplemental exhibit. Defendant's motion is thus GRANTED.

**Conclusion**

For all the reasons stated, I recommend that the District Court deny Thomas's motion for preliminary injunction, Doc. 3. Additionally, Thomas's motion for evidentiary hearing, Doc. 10, is denied and Defendant's motion, Doc. 13, is granted.

Dated: December 19, 2025

/s/ *James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–531 (6th Cir. 2019).