IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TIFFANY THOMAS, | CASE NO. 1:25-cv-2167 |
| Plaintiff, | DISTRICT JUDGE DONALD C. NUGENT |
| vs. | |
| BEACHWOOD CITY SCHOOL DISTRICT BOARD OF EDUCATION, | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Defendant. | **REPORT AND RECOMENDATION** |

*Introduction*

In October 2025, Plaintiff Tiffany Thomas filed a four-count Complaint against Defendant Beachwood City School District Board of Education alleging claims concerning the Board's institution of a "communication protocol" related to Thomas's communications with school officials about her child, C.A. Doc. 1. After she failed to attend the case management conference, the Court ordered her to appear for a show cause hearing on January 28, 2026. *See* Doc. 27.

On January 27, 2026, Thomas filed a motion for leave to file a first amended complaint. Doc. 32. The next day, the Court determined at the show cause hearing that Thomas had shown cause for her failure to attend the case management conference. *See* Doc. 34.

A few weeks later, the Board filed a motion for judgment on the pleadings, Doc. 42, and an opposition to Thomas's motion to file a first amended

complaint, Doc. 43. Thomas next moved for leave to file a second amended complaint. Doc. 47. In light of Thomas's motion to file a second amended complaint, the Court denied as moot her motion to file a first amended complaint. Doc. 48.

After the Board opposed Thomas's motion to file a second amended complaint, Thomas filed a reply, Doc. 50, and a document styled as a motion for leave to file a second amended complaint—not to be confused with her earlier motion for leave to file a second amended complaint—and to treat Thomas's earlier motion for leave as her response to the Board's motion to dismiss, Doc. 52.[1]

In short, the Court has to adjudicate the Board's motion for judgment on the pleadings, Doc. 42, and Thomas's motion for leave to file a second amended complaint, Doc. 52. Because the Court ultimately recommends granting the Board's motion and has determined that Thomas's motion should be denied, the Court has determined that the best course is to address the Board's motion for judgment on the pleadings in this report and recommendation and to deal with Thomas's motion for leave to file a second amended complaint in a contemporaneously filed accompanying order.

---

[1]     Stated differently, Thomas clarified in Document 52, that her first motion for leave to file a second complaint, *see* Doc. 47, should be construed as her response to the Board's motion to dismiss.

*Background*

Although Thomas is unrepresented and is not an attorney, the face of the Complaint indicates that she filed it "individually and as parent of C.A. a minor." *Id*. at 1. According to the Complaint, the Board:

> imposed a unilateral "communication protocol" that blocks Plaintiff from directly contacting [C.A.'s] teachers, therapists, and service providers, rerouting every message through three administrators. The restriction was imposed after Plaintiff filed protected complaints and advocacy efforts, and it has prevented her from participating in [C.A.'s] education.

*Id*.

According to the facts alleged in the Complaint, which the Court takes as true for purposes of this report and recommendation, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007), C.A. is 12 years old and is enrolled at Beachwood Middle School.[2] Doc. 1, at 2. He is autistic, non-verbal, and "cognitively delayed." *Id*.

Thomas has been an enthusiastic participant in C.A.'s "educational planning," having gone so far as to "found[] the local Special Education PTA … to promote inclusion." *Id*. In June 2025, she "filed a state complaint concerning denial of inclusive extracurricular and mental-health programming." *Id*. Thomas does not allege the entity against whom she filed this state complaint

---

[2]    In her verified Complaint, Thomas states that she "resides in Beachwood, Ohio." Doc. 1, at 1. Her signature block and the Court's docket, however, list her address as a residence in Cleveland, Ohio. *Id*. at 4

3

but she is pro se and when adjudicating a motion for judgment on the pleadings, this Court must "construe [the complaint] 'in the light most favorable to [Thomas], accept [the complaint's] allegations as true, and draw all reasonable inferences in [Thomas's] favor." *Mills v. Barnard*, 869 F.3d 473, 479 (6th Cir. 2017) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)); *see also See Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings."). So the Court infers that Thomas filed this state complaint against the Board.

The following month, Thomas "filed [human resources] complaints alleging retaliation and harassment by district administrators." Doc. 1, at 2. And in September 2025, "Superintendent Robert Hardis directed the district's [information technology] department to block [Thomas's] emails to teachers and reroute all communications to himself, Principal Tony Srithai, and Director of Pupil Services Jen Polak." *Id.*

According to Thomas, there is "no board policy" that "authorizes this communication restriction." *Id.* Instead, and as confirmed "[i]n correspondence" from the Board's President, Megan Walsh, "the Superintendent may act at his discretion." *Id.*

Because of this communication protocol, Thomas "cannot email or receive timely responses from [C.A.'s] service providers." *Id.* Further,

4

"[q]uestions about assignments, data, or incidents[,] such as an unexplained eye injury[,] go unanswered." *Id*.

The Complaint alleges that "[t]he district has justified the [communication] restriction by claiming that staff felt 'harassed or threatened.'" *Id*. The Complaint follows this assertion with three bullet points:

- No staff complaint was filed with HR;
- The Beachwood Police Department reported no investigation or criminal complaint;
- Public-records searches produced no supporting documents.

*Id*. Given Thomas's pro se status, the Court infers that these points allege that (1) no member of the district's staff complained to human resources about Thomas harassing or threatening them; (2) the local police did not investigate Thomas for harassing or threatening anyone and did not file a criminal complaint about that sort of conduct; and (3) Thomas searched public records and could not locate documents that would support the district's assertion that staff members "felt 'harassed and threatened'" by Thomas.

According to the Complaint, the school district's human resources director "later admitted that a related teacher-communication complaint was 'inadvertently omitted' for more than thirty days." Doc. 1, at 2. The Complaint does not say what the teacher-communication complaint was omitted from or explain the significance of the reference to 30 days. But the Complaint adds without explanation that this omission "confirm[s] administrative delay and inconsistency." Doc. 1, at 2.

Finally, the Complaint alleges that since August 2025, C.A. "has lost instructional time, missed services, and regressed behaviorally." *Id*. And although Thomas "has filed state and federal complaints seeking relief, … the district continues to enforce the communication ban." *Id*.

Based on these factual assertions, the Complaint alleges four claims for relief. Count one requires some unpacking. It alleges the "Denial of FAPE (IDEA, 20 U.S.C. § 1400 et seq.)," and asserts the "[b]y preventing [Thomas's] meaningful participation in [C.A.'s] IEP and withholding service information," the Board "violated IDEA procedural safeguards and deprived C.A. of a Free Appropriate Public Education." *Id*. at 3. IDEA is the Individuals with Disabilities Education Act, which is codified at 20 U.S.C. § 1400 and the provisions that follow it.[3] *See Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 157 (2017). The acronym FAPE, in turn, stands for *Free Appropriate Public Education*. *Id*. at 158. The Act makes a FAPE "available to all children with disabilities residing in the State between the ages of 3 and 21." 20 U.S.C. § 1412(a)(1)(A). "[A] FAPE comprises 'special education and related services'—

---

[3]  Acronyms and initialisms, which only help the author and not the reader, are a bane of the legal profession. *See Del. Riverkeeper Network v. FERC*, 753 F.3d 1304, 1320-21 (D.C. Cir. 2014) (Silberman, J., concurring). But their use is unfortunately unavoidable here. That said, the Individuals with Disabilities Education Act, or IDEA, was reauthorized in 2004 as the Individuals with Disabilities Education Improvement Act ("IDEIA"), *see* Pub. L. 108-446, 118 Stat 2647 (Dec. 3, 2004). This latter acronym seemingly hasn't caught on. *See Alzandani v. Hamtramck Pub. Schs.*, No. 25-1601, - - F.4th - -, 2026 WL 1296044, at *1 (6th Cir. May 12, 2026). So the Court will stick with IDEA.

both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction." *Fry*, 580 U.S. at 158 (quoting 20 U.S.C. § 1401(9), (26), (29)). Finally, The initialism "IEP" stands for *individualized education program*. *See Honig v. Doe*, 484 U.S. 305, 311 (1988). Putting all of this together, Thomas is claiming that through the communication protocol, the Board "violated" unnamed "procedural safeguards" found in the IDEA and thus deprived C.A. of a Free Appropriate Public Education.

Count two alleges "Disability Discrimination (Section 504 & ADA)." Doc. 1, at 3. Section 504 refers to Section 504 of the Rehabilitation Act, which is codified at 29 U.S.C. § 794. It "prohibits discrimination against certain handicapped individuals 'under any program or activity receiving Federal financial assistance.'" *Moreno v. Consol. Rail Corp.*, 99 F.3d 782, 784 (6th Cir. 1996). The ADA is the Americans with Disabilities Act of 1990, Pub. L. 101-336, 104 Stat. 327, which is codified at 42 U.S.C. §§ 12101 through 12213. Count two contains the assertion that the Board "discriminated against C.A. on the basis of disability by restricting parental participation, failing to provide equal access to extracurricular programs, and ignoring accommodation needs." Doc. 1, at 3.

Count three alleges retaliation under the ADA, Section 504, and the First Amendment. *Id*. The Complaint alleges that after Thomas "filed protected complaints and founded a special education parent teacher

association chapter, the Board retaliated by imposing a communication block, mischaracterizing [Thomas's] advocacy as harassment, and discouraging staff interaction." *Id.*

Finally, count four alleges a First Amendment violation. *Id.* According to the Complaint, the "communication protocol unlawfully restricts Thomas's right to petition and communicate with public officials about [C.A.'s] education." *Id.*

*Discussion*

*Rule 12(c) standard*

Federal Rule of Civil Procedure 12(c) allows a party to "move for judgment on the pleadings." A motion under Rule 12(c) is an appropriate vehicle to argue that a complaint "[f]ail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(h)(2); *see Savel v. MetroHealth Sys.*, 96 F.4th 932, 938 n.2 (6th Cir. 2024) ("A district court can dismiss a complaint on a Rule 12(c) motion for failure to state a claim as it would on a Rule 12(b)(6) motion."). A court deciding a motion under Rule 12(c), therefore, applies the same standard applicable to motions under Rule 12(b)(6). *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020).

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint by evaluating the complaint's allegations in a light most favorable to the plaintiff to determine whether they state a valid claim for relief. *In re NM Holdings Co.*, LLC, 622 F.3d 613, 618 (6th Cir. 2010). When considering a Rule 12(b)(6)

motion, the Court must dismiss a claim unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 555 (internal citations and footnote omitted).

In deciding a motion under Rule 12(b)(6), a court "must construe the complaint in the light most favorable to the plaintiff," *In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2010), and must "assum[e] that all the allegations in the complaint are true," *Twombly*, 550 U.S. at 555. But "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id*. (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level," and "'must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'" *Id*. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed. 2004)).

Courts deciding a Rule 12(b)(6) motion "may not consider evidence outside the pleadings." *Clark v. Jackson*, No. 22-5553, 2023 WL 2787325, at *2 (6th Cir. Apr. 5, 2023); *see Bates*, 958 F.3d at 483. But a court may consider matters attached to a complaint or "incorporated into [it] by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). A court can

9

also consider "matters of which [it] may take judicial notice." *Tellabs*, 551 U.S. at 322.

Although the Court should liberally construe pro se filings, this requirement "has limits." *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001). When considering a pro se complaint, a court is "not require[d] … to conjure allegations on a litigant's behalf." *Id*. Instead, a pro se complaint must comply with basic pleading requirements and "provide notice to the opposing party of the relief sought." *Id*. The Court is thus not required to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

*Count one*

Count one alleges that through the communication protocol, the Board denied or "deprived C.A. of a Free Appropriate Public Education." Doc. 1 at 3. The Board says that this count is subject to dismissal for failure to allege that Thomas exhausted administrative remedies. Doc. 42, at 5.[4] Before discussing the problems with this count, there is a wrinkle to iron out.

"Because the failure to exhaust is an affirmative defense," it is normally the case that "dismissal under Rule 12(b)(6) or 12(c) is appropriate only if the face of the complaint shows that the plaintiff has not in fact exhausted her administrative remedies." *Bushong v. Delaware City Sch. Dist.*, 851 F. App'x

---

[4]     The Court cites the CM/ECF generated pages numbers found at the top of the parties' filings.

541, 545 (6th Cir. 2021). And because the face of Thomas's Complaint does not show that she failed to exhaust administrative remedies, one might think that dismissal under Rule 12(c) would not be appropriate.[5] But in the context of the IDEA, Title VII, the ADA, and the Rehabilitation Act, exhaustion is essentially a condition precedent, *see* Fed. R. Civ. P. 9(c), making dismissal under Rule 12(c) available, *see Li v. Revere Loc. Sch. Dist.*, No. 21-3422, 2023 WL 3302062, at *8–11 (6th Cir. May 8, 2023); *L.G. by & through G.G. v. Bd. of Educ. of Fayette Cnty., Kentucky*, 775 F. App'x 227, 230–32 (6th Cir. 2019); *see also Bullington v. Bedford Cnty., Tennessee*, 905 F.3d 467, 470 (6th Cir. 2018) (holding that a "district court correctly dismissed [an] ADA claim" for failure to exhaust administrative remedies); *Robinette v. Union Hosp.*, No. 17-3471, 2018 WL 2106403, at *2 (6th Cir. Mar. 22, 2018) (Title VII); *cf. Mitchell v. Chapman*, 343 F.3d 811, 819–20 (6th Cir. 2003) ("a party's exhaustion of administrative processes for filing a claim of discrimination is a condition precedent to filing suit in the district court, rather than a jurisdictional prerequisite"). We can thus move to the Board's challenge.

Under the IDEA, a plaintiff is required to exhaust administrative remedies as a prerequisite to bringing suit over the denial of a FAPE. *See* 20

---

[5]     Exhaustion under IDEA is likely not jurisdictional. *See Li v. Revere Loc. Sch. Dist.*, No. 21-3422, 2023 WL 3302062, at *10 & n.12 (6th Cir. May 8, 2023); *see also Doe by K.M. v. Knox Cnty. Bd. of Educ.*, 56 F.4th 1076, 1084 (6th Cir. 2023) ("We have healthy skepticism for those courts that view the exhaustion rule as jurisdictional.").

U.S.C. § 1415(*l*). The Complaint, however, contains no allegations showing that Thomas exhausted administrative remedies with respect to this claim.

There's more. As the Supreme Court has explained, it is the "eligible *child*" who "acquires a 'substantive right' to" the "'special education and related services'" that "comprise[]" a FAPE. *Fry*, 580 U.S. at 158 (emphasis added); *see* 20 U.S.C. § 1412(a)(1)(A). The IDEA does not give a parent a right to a FAPE because of her status as a parent of a child entitled to the IDEA's benefit. *See* 20 U.S.C. § 1412(a)(1)(A). To the extent that Thomas seeks to advance her own claim in count one, that effort must fail.[6]

The Complaint says that the Board "violated IDEA procedural safeguards." To be sure, 20 U.S.C. § 1412(a)(6) provides "that Children with disabilities and their parents are afforded the procedural safeguards required by 20 U.S.C. § 1412. But the Complaint doesn't allege what safeguards were violated or how they were violated. And section 1415 does not include among its provisions a right for parents to directly email teachers.

Further, as a pro se litigant, Thomas cannot represent C.A.'s interests. *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) ("parents cannot appear pro se on behalf of their minor children because a minor's personal

---

[6]    "A parent may represent herself pro se to vindicate rights that may be intertwined with her child's granted under a statutory scheme such as Individuals with Disabilities Education Act." *H.C. v. Fleming Cnty. Kentucky Bd. of Educ.*, No. 17-6269, 2018 WL 11589034, at *2 (6th Cir. July 11, 2018) (citing *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 535 (2007)). In count one, however, Thomas alleges only that the Board "deprived C.A. of a free appropriate public education." Doc. 1, at 3.

cause of action is her own and does not belong to her parent or representative."). Thomas thus lacks standing to vindicate C.A.'s right to a FAPE.

Count one should be dismissed.

*Count two*

Count two alleges disability discrimination under Section 504 and the ADA and asserts that the Board discriminated against C.A. on the basis of his disability. Doc. 1, at 3. But, as noted, Thomas is pro se and thus cannot represent C.A.

Count two should be dismissed.

*Count three*

Count three alleges retaliation under Section 504, the ADA, and the First Amendment. Doc. 1, at 3. Thomas alleges that "after" she "filed protected complaints and founded a [special education parent teacher association] chapter, the Board retaliated by imposing a communication block, mischaracterizing [her] advocacy as harassment, and discouraging staff interaction." *Id*.

As the Board notes, there is no private cause of action under Section 504 for retaliation. Doc. 42, at 9 (citing *Smith v. Michigan Dep't of Corr.*, 159 F.4th 1067, 1074-1082 (6th Cir. 2025)). The Section 504 aspect of count three thus fails at the threshold. This leaves Thomas's ADA and First Amendment retaliation claims.

13

The ADA prohibits a "public entity," including a school district from denying "someone access to one of its 'services, programs, or activities' or otherwise … 'subject[ing]' someone 'to discrimination.'" *Y.A. by Alzandani v. Hamtramck Pub. Schs.*, 137 F.4th 862, 870 (6th Cir. 2025); *see* 42 U.S.C. § 12132. The ADA contains a retaliation provision which provides:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a). To make out an ADA-retaliation claim, a plaintiff must allege that:

> (1) she engaged in activity protected under the ADA; (2) the [defendant] knew of that activity; (3) the [defendant] took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action.

*Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014). In the context of the ADA, "'protected activity[],' … mean[s] an 'action taken to protest or oppose a statutorily prohibited discrimination.'" *Pemberton v. Bell's Brewery, Inc.*, 150 F.4th 751, 767 (6th Cir. 2025) (citation omitted).

The Board argues that Thomas's ADA-retaliation claim fails because it is subject to the same exhaustion requirement that applies to a claim under the IDEA. Doc. 42, at 9–10; *see* 20 U.S.C. § 1415(*l*); *Deister v. Auto Club Ins. Ass'n*, 647 F. App'x 652, 658 (6th Cir. 2016); *see also Sagan v. Sumner County Bd. of Educ.*, 726 F.Supp. 2d 868, 878 (M.D. Tenn. 2010) ("Regardless of how a

14

claim is couched ... any claim that relates directly to a student's access to an FAPE is subject to the exhaustion requirement."). The Sixth Circuit caselaw is consistent with the Board's argument. *See W.R. v. Ohio Health Dep't*, 651 F. App'x 514, 520 (6th Cir. 2016); *see id.* at 519 (explaining that under authority granted by Congress, the Department of Education had promulgated 34 C.F.R. § 303.448(e), which requires exhaustion of ADA claims and that Ohio had "adopted" this requirement). Some courts, however, have held that the ADA's exhaustion requirement, which is found in Title V of that Act, does not apply if "an individual is retaliated against for protesting acts that violate Title II of the ADA," which deals with discrimination by public entities, such as public schools. *Bennett v. Bd. of Educ. of Washington Cnty. Joint Vocational Sch. Dist.*, No. 08–CV–663, 2010 WL 3910364, at \*3–5 (S.D. Ohio Oct.4, 2010); *see Mitchell through Mitchell v. Cmty. Mental Health of Cent. Michigan*, 243 F. Supp. 3d 822, 833 (E.D. Mich. 2017).

Even so, in light of *W.R.* and that fact that the Complaint does not allege that Thomas exhausted administrative remedies as to her ADA retaliation claim, the ADA aspect of count three fails.

But even if Thomas were not required to exhaust the ADA aspect of count three, Thomas has not alleged facts that would support the inference that there is a causal connection between any ADA-protected activity and the communication protocol. To be sure, the Complaint alleges that "[a]fter [Thomas] filed protected complaints and founded a SEPTA chapter, [the

15

Board] retaliated." Doc. 1, at 3. But this is just a rote recitation of the elements, which is not enough to satisfy Rule 8. *See Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

Review of the Complaint reveals that it contains only two factual allegations about potentially protected activity at any time before the Board implemented the communication protocol. *See* Doc. 1, at 2. First, the Complaint alleges that "[i]n June 2025, [Thomas] filed a state complaint concerning denial of inclusive extracurricular and mental-health programming." *Id.* And "[o]n August 25, 2025, [Thomas] filed HR complaints alleging retaliation and harassment by district administrators." *Id.*

Recall that the ADA deals with disabilities. And its anti-retaliation provision specifically deals with an "individual [who] has opposed any act or practice made unlawful by [the ADA] or" an "individual [who] made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" the ADA. 42 U.S.C. § 12203(a). In other words, "[t]he 'ADA is not … a catchall statute creating a cause of action for any … retaliation, but [instead] protects individuals only from retaliation for engaging in ... activity covered by the ADA." *Pemberton*, 150 F.4th at 760 (quoting *Rorrer*, 743 F.3d at 1046). To make out an ADA-retaliation claim, therefore, the alleged victim must allege facts showing that she opposed

16

disability-based discrimination or, among other things, "made a charge" about disability-based discrimination. *See id.* at 768 (explaining that "[t]he ADA does not protect" every activity; the "activity has [to] relat[e] to a disability, or to an action opposing an ADA-prohibited discrimination.").

Taking the two factual assertions in reverse order, Thomas alleges that she filed the August complaints with human resources concerning retaliation and harassment by district administrators. But retaliation and harassment for what? Thomas does not allege that these complaints were made "to protest or oppose a statutorily prohibited discrimination." *Pemberton*, 150 F.4th  at 767. And she does not otherwise allege that her August complaints had anything to with the matters to which the ADA applies.

This leaves the June complaints filed with state authorities "concerning [the] denial of inclusive extracurricular and mental-health programming." Doc. 1, at 2. Inferentially, Thomas's alleged complaints concerned C.A., whom she has alleged is disabled. But she doesn't allege that the Board denied programming *based on* C.A.'s disability.

Further, Thomas does not allege facts showing that the Board implemented the communication protocol in response to her June complaints. Implicitly, therefore, she asks the Court to infer a connection between the June complaints and the communication protocol based solely on the fact that the two events are about two-and-a-half months apart.

17

In this regard, the Sixth Circuit has "noted that temporal proximity alone is not sufficient to support a retaliation claim … and that plaintiffs generally must show temporal proximity combined with 'other compelling evidence' of retaliation to support their claims." *Howington v. Quality Rest. Concepts, LLC*, 298 F. App'x 436, 446 (6th Cir. 2008) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000)). On the other hand, "'there may be circumstances where evidence of temporal proximity alone would be sufficient to support [an] inference' of retaliation." *Id.* (quoting *Nguyen*, 229 F.3d at 567). If the retaliatory conduct follows within one to two days of protected activity, a court may infer causation without more evidence. *See id.* at 446–47. The cases in which a court could infer causation based solely on a temporal connection are "'limited [in] number.'" *Id.* at 447 (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)); *cf. Mickey*, 516 F.3d at 523–26 (involving an "employer [who] fires an employee immediately after learning of a protected activity," although the activity occurred 12 days before). Basically, "the more that a protected activity is temporally distant from the adverse employment action, 'the more the plaintiff must supplement his claim with other evidence of retaliatory conduct to establish causality.'" *Boshaw v. Midland Brewing Co.*, 32 F.4th 598, 605 (6th Cir. 2022) (quoting *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010)); *cf. Lemaster v. Lawrence Cnty., Kentucky*, 65 F.4th 302, 310 (6th Cir. 2023) ("In most cases," when "a plaintiff … show[s] some moderate time gap—say, a matter of

18

months," the Court's "summary-judgment inquiry … asks whether the plaintiff has offered enough 'other evidence of retaliatory conduct' apart from this temporal proximity"). And "three months … between" protected activity "and … termination[] [is] a firm indicator of a lack of a causal link." *Boshaw*, 32 F.4th at 605.

Given Sixth Circuit precedent, Thomas's bare allegation that she filed complaints in June is, without more, insufficient to show that the Board implemented the communication protocol in September in retaliation for the June complaints. *See Vereecke*, 609 F.3d at 400–01; *Brown v. Chase Brass & Copper Co.*, 14 F. App'x 482, 490 (6th Cir. 2001) ("the mere fact that an adverse … action occurs subsequent to the protected activity does not, standing alone, support an inference of retaliation") (citing *Cooper v. City of N. Olmstead*, 795 F.2d 1265, 1272 (6th Cir. 1986)).

Thomas's ADA-retaliation claims thus fails.

As to Thomas's First Amendment claim, retaliating against a person because the person exercised her constitutional rights "is itself a violation of the Constitution." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999); *see Crawford-El v. Britton*, 523 U.S. 574, 588 n.10 (1998). To make out a valid First Amendment retaliation claim, Thomas must allege that:

> (1) … [s]he was engaged in a constitutionally protected activity; (2) … the defendant's adverse action caused h[er] to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) … the adverse action was motivated at least in part as a

19

> response to the exercise of [her] constitutional rights."

*Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 469, 477–78 (6th Cir. 2006).

Thomas's First Amendment claim suffers from the same causal-connection problem as her ADA-retaliation claim.[7] The First Amendment retaliation claim also fails because, as this Court has explained, "courts that have confronted" communication protocols like the one Thomas alleges, "have rejected First Amendment claims." *Thomas v. Beachwood City Sch. Dist. Bd. of Educ.*, No. 1:25-cv-2167, 2025 WL 3684251, at *5 (N.D. Ohio Dec. 19, 2025) (citing *McElhaney v. Williams*, 81 F.4th 550, 559 (6th Cir. 2023), *cert. denied*, __ U.S. __, 144 S. Ct. 696 (2024); *L. F. v. Lake Washington Sch. Dist. #414*, 947 F.3d 621, 626 (9th Cir. 2020); *Boone v. Lowell Area Schs.*, 2025 U.S. Dist. LEXIS 193862, *9 (W.D. Mich. Sept. 30, 2025); *Searle v. Red Creek Cent. Sch. Dist.*, No. 21-cv-6086, 2021 WL 5086405, at *4 (W.D.N.Y. Nov. 2, 2021)), *report and recommendation adopted*, 2026 WL 297678 (N.D. Ohio Feb. 4, 2026). And the reason courts have rejected claims like Thomas's is that "a school may impose reasonable, viewpoint neutral, time, place, and manner restrictions on

---

[7]     Because Thomas didn't allege that the August complaints related to C.A.'s disability, the Court's temporal-connection analysis as to the ADA-retaliation claim focused on the June complaints. But the same analysis would apply to the August complaints because the Board did not implement the protocol within a day or two of the August complaints. *See Howington*, 298 F. App'x at 446–47 (explaining that retaliatory conduct that follows within one to two days of protected activity, would fall within "the 'limited number of cases' in which" a court could "'infer'" causation without additional evidence).

parental interactions with the school." *McElhaney*, 81 F.4th at 559. Further, Thomas has not alleged any facts showing that her speech was chilled or restricted in any way. She also has not alleged that she was "prohibited from communicating concerns about [C.A.'s] education or treatment; rather, she claims that the manner in which she was able to communicate with the School and its employees was restricted." *Boone*, 2025 U.S. Dist. LEXIS 193862, at *10; *see* Doc. 1, at 2 (alleging that Thomas "cannot email or receive timely responses from [C.A.'s] service providers"). But whether or not Thomas can email C.A.'s teachers, the communication protocol channels her emails to C.A.'s principal, the superintendent, and the director of pupil services. Doc. 1, at 2. It is not "a 'ban' or 'restraint' on [Thomas's] speech." *Boone*, 2025 U.S. Dist. LEXIS 193862, at *10. So the First Amendment retaliation claim fails.

Count three should be dismissed.

*Count four*

In count four, Thomas alleges that the communication protocol violates the First Amendment because it restricts her "right to petition and communicate with public officials about her child's education." Doc. 1, at 3.

The initial problem with count four is that the right to petition under the First Amendment does not give Thomas, or any parent, a right to unfettered communication with the teachers of the parent's child. *See Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011) ("The right to petition allows citizens to express their ideas, hopes, and concerns to their government

21

and their elected representatives."). Rather, the right to petition "protects the 'right of access' to courts and government forums. It does not go further." *Wisconsin Voter All. v. Millis*, 166 F.4th 627, 636 (7th Cir. 2026) (citations omitted); see *Minnesota State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271, 285 (1984) ("Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications"); *Smith v. Ark. State Highway Emps.*, 441 U.S. 463, 465 (1979) ("the First Amendment does not impose any affirmative obligation on the government to listen, [or] to respond").

It is thus unsurprising that, as noted, courts have rejected First Amendment challenges to similar communication protocols. *See, e.g.*, *Boone*, 2025 U.S. Dist. LEXIS 193862, *9–10. At bottom, there is no basis to find that Thomas has a First Amendment-based right to direct email access to C.A.'s teachers. *Cf. Doe v. Salina*, No. 23-cv-3529, 2024 WL 5077629, at *21 (E.D.N.Y. Dec. 11, 2024) ("the 'right to petition government afforded by the First Amendment does not include the absolute right to speak in person to officials. Where written communications are considered by government officials, denial of a hearing does not infringe upon the right to petition.'") (quoting *Cronin v. Town of Amesbury*, 895 F. Supp. 375, 389–90 (D. Mass. 1995), *aff'd*, 81 F.3d 257 (1st Cir. 1996)). Indeed, "First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be

22

desired." *Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 642 (1981).

Count four, alleging that the Board infringed Thomas right to petition under the First Amendment fails.

*Conclusion*

For the reasons discussed above, the Court should grant the Board's motion for judgment on the pleadings.[8]

Dated: May 19, 2026

 */s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).

---

[8] Ordinarily, on recommending dismissal of Thomas's Complaint, the Court might grant Thomas leave to file a second amended complaint, conditioned on the District Court accepting the recommendation to dismiss the Complaint. *See Brown v. Matauszak*, 415 F. App'x 608, 614–16 (6th Cir. 2011). But Thomas has filed a motion to file a second amended complaint, Doc. 47, which the Board has opposed, *see* Doc. 53. And Thomas has asked that the Court treat the proposed second amended complaint as the "operative pleading." Doc. 50, at 2; Doc. 52, at 1. As noted, the Court adjudicates the motion to file a second amended complaint in a separate order.